RODES
*vs*
BLYTHE *et al.*

witness, the offer should be carried out by release, &c. or this Court will not interfere.

---

# Rodes *vs* Blythe *et al.*

### ERROR TO THE MADISON CIRCUIT.

#### Usury.  Interest.

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

IN this case, on a bill filed by a surety for enjoining a judgment, on the ground of usury—it appearing that the original loan, made to the principal since the enactment of the statute of 1819, (*Stat. Law*, 856,) for ten per cent. interest for one year, had been successively compounded, at the same rate, at the end of each year, for a period of several years, by substituted notes; the Circuit Court dissolved the injunction to the extent of the principal sum first loaned, and six per cent annually compounded.  And the only question for revision is, whether the decree was right so far as it sanctioned the annual

CHANCERY.

*Case 111.*

May 9.

The case stated.

2bm335
f122  328

RODES
vs
BLYTHE et al.

Original contract for annual compounding interest, have been held oppressive and evasive of the laws against usury.

If a borrower, without any original agreement, instead of paying the legal interest, agree to pay interest thereon, as well as on the principal, for further forbearance—it is legal and not usurious.

If a loan be made at ten per cent. and annually renewed by compounding interest at that rate, the chancellor will relieve to the extent of the illegal interest, but admit of the annual compounding of interest to the extent of six per cent.

The statute of 1819 only ren-

compounding of the legal interest by new contracts made at the end of each year.

A stipulation in an original contract of loan for prospective compounding of even the legal rate of interest has been deemed by Courts of equity, oppressive and rather evasive of the law against usurious exactions.

But when, without any such original agreement, the borrower, instead of paying borrowed money which had become due, according to the terms of a *bona fide* contract, agrees to compound the principal and legal interest, and pay the legal rate for further forbearance, such a new contract has never been considered as either usurious, oppressive, or unreasonable: *Breckenridge* vs *Brooks*, (2 *A. K. M.* 339;) *Connecticut* vs *Jackson*, (1 *Johnson's Chy. Rep.* 16;) *Vanbenschooten* vs *Lawson*, (6 *Ib.* 314;) *Thornhill* vs *Evans*, (2 *Atk.* 330, *n.* 1;) 1 *Ball & Beatty*, 430.

This doctrine is perfectly consistent with justice and public policy; for when, according to a contract of loan, interest becomes due, it is a debt which the creditor has an unquestionable right either to collect or reloan to the debtor, by a new contract of forbearance.

In this case there is no reason for presuming that the annual renewals were not, in fact, made by new contracts, at the end of each year, for reloaning the aggregate amount then due by the terms of the preceding contract.

Then, had no more than six per cent. been compounded, there could be no doubt that the coercion of the ultimate aggregate would have been neither oppressive, illegal, nor unconscientious. Does the simple fact that more than legal interest was reserved and compounded deprive the lenders of what they would have been indisputably entitled to had there been no usury? We think not. It seems to us that the usury, which, and only which, was illegal and void, could not infect and make void the compounding to the extent of six per cent. which was legal, but that the contracts for compounding were as valid to the extent of six per cent. as they would have been had no more been reserved.

The statute of 1819, *supra*, avoids an usurious contract only to the extent of the usury, and authorizes the

recovery of the principal and six per cent. interest, notwithstanding the illegality of the usurious reservation. It does not affect the right to renew loans and thus compound legal interest; and, of course, since this enactment, as before, the aggregate of principal and interest due at every renewal, and actually re-loaned, is the amount then "*so loaned*," and which, therefore, the lender has the express legal right to coerce.

It is undeniable that, under this statute, the fiduciaries, who made the original loan in this case, had a legal right not only to recover six per cent. on that loan for one year, but also to re-loan that interest when it became due. Why then should the re-loan be illegal to any greater extent than the usury which was void in the preceding loan and the reserved interest on that usury? We are unable to escape the conclusion that, as a renewed loan of the aggregate of the original principal and legal interest due thereon, may be valid to the whole extent of the sum so re-loaned, and as now a loan for more than six per cent. interest is invalid here, only to the extent of the illegal excess above that prescribed rate; therefore, successive compoundings of usurious interest, at reasonable rests, may not be void or inequitable to any greater extent than the excess of each included item of interest beyond six per cent. per annum and the reserved interest on such excesses.

It may be that compoundings might be so frequent or otherwise unreasonable or unusual, as to indicate a disposition not to re-loan in good faith, but to oppress the borrower, and by the device of rapid renewals, to evade the statute against usury. Such cases, when they occur, must stand on their own intrinsic equity, and will be treated as they deserve, according to their true character. This does not appear to be any such case. On the contrary, it is ostensibly, and we should presume really, the common case (excepting only as to the usury,) of a loan and successive re-loans at the end of the customary period of a year, by trustees whose duty it was to make interest as well as original principal periodically productive. And we are not permitted to presume any purpose

RODES
*vs*
BLYTHE *et al.*

ders void contracts for usurious interest, void to the extent of the usury, and authorizes the recovery of principal and legal interest; and does not affect the right to renew loans and thus compound legal interest.

*It might be* that when the compoundings are so unusually frequent as to indicate a disposition to oppress and to evade the statute against usury, the Chancellor might interfere; such cases are left to be disposed of by their own particular circumstances.

of evasion or any other unfairness or oppression than the reservation of ten instead of six per cent. per annum.

We do not feel authorized, therefore, to disturb the decree of the Circuit Court.

The case of *Kay* vs *Fawler*, (7 *Mon.* 593,) has been relied on as inconsistent with the foregoing conclusions; but it is not so, in our opinion.

This case distinguished from that of *Kay* vs *Fowler*, (7 *Mon.* 593.)

In that case the original loan and all the renewals except the last, had been made before the date of the statute of 1819, and consequently were all, except the last, void for the whole amount of principal and interest. *Kay*, the usurer, nevertheless, filed a bill for enforcing a collateral security for the accumulated debt claimed in consequence of all the renewals; and this Court gave *him* relief to the extent of the sum first loaned, and six per cent. current interest thereon, without regard to the conventional rests. For this two reasons may be supposed: 1st, *Kay* was complainant seeking to enforce enormous usury, and had not even shown, satisfactorily, the dates and terms of the various renewals. 2nd, and more conclusively, his original loan and all his renewals prior to 1819, being utterly void, he was entitled to nothing more than he could equitably claim, in consequence of the last contract made since that year, or rather on the original loan as recognized by that contract; and whether the entire consideration of that contract, being thus void, he should recover any thing, was the main question then to be decided, under the statute of 1819. He had not, in this last renewal, purged the usury, but included the whole of it; and, therefore, had not brought himself within the common law principle, which may sustain such a final contract of purgation, and consequently it may be that this Court disregarded the last bond as an invalid security, and considered Kay as entitled, on a contract implied by the original loan. And certainly the Court decreed to him as much as he could possibly have been entitled to, unless he might have had an equitable right to interest from the date of the last renewal, on the amount accorded to him by the Court as then equitably available. But this small matter does not appear to have been particularly considered; and if it had been, still there might be

reason to doubt whether *Kay* did not receive at least as much as, in equity and conscience, *such a complainant* had a right to expect, when invoking the aid of the Chan-cellor in such a case as his.  And, moreover, *Kay*, as creditor, was seeking the aid of a court of equity to en-force a contract on an illegal and void consideration; but in this case one of the debtors (though a surety) is seek-ing the like assistance to *avoid* contracts, even so far as they were founded on a legal and valuable consider-ation.

Therefore, we cannot consider the decision, or rather mandate in *Kay* vs *Fowler*, as authoritatively settling any principle for governing the case we are now revising.

Our conclusion is, that the decree be affirmed.

*Owsley & Goodloe* for plaintiff; *Turner and Breck* for defendants.